Cameron, J.
delivered the opinion of the Court.
The facts found in this case, out of which the questions submitted arise, are these—that Joseph Haiden, on the 28th April, 1786, executed a bond to the plaintiff, in the penal sum of £2000, conditioned for the payment of £1000 on or before the 1st May, 1787—that the plaintiff recovered judgment for the penalty of the bond, on which execution issued returnable to September term, 1806, at Salisbury Superior Court, and was put into the hands of the defendant, then being sheriff of Rowan, who levied it on sundry Negroes, and among others on one named Isham, then in the possession of Margaret Brown, executrix, &c. of the said Jos. Haiden.
The defendant advertised the sale of the said negro Isham, under the execution and levy aforesaid. On the day of sale, Robert Haiden, a son of the said Joseph Haiden, claimed the said negro Isham; whereupon the defendant impannelled a Jury to try the right of property, in said negro, who found that the said negro was not of the estate of the said Joseph Haiden, but belonged, in absolute property, to the said Robert Haiden, by virtue of a parol gift, made *463 by the said Joseph, to the said Robert, in 1796. The plaintiff had no notice of the inquisition; it was ex parte, and took place on the 28th April, 1806. The defendant discharged the negro on the finding of the Jury. On the 10th May following, the plaintiff tendered to the defendant a bond of indemnity, with sufficient security, and required him to sell the said negro Isham, under the execution aforesaid. The defendant refused to accept the bond, or to sell the negro—He returned the execution, satisfied as to £1089 10s. by the Sale of sundry negroes not including Isham. That the balance of the execution remained unsatisfied, “no more property being to be found.”
That at the time of the gift, Robert was a minor, and lived with his father, who continued to keep possession of the negro till his death. By his last will he devised the said negro to his son Robert, who continued to live with his father till his death. That at the time of the gift, and continually after the time of his death, the said Joseph Haiden was possessed of personal estate more than sufficient to pay all his debts, and was seized of real estate, unincumbered, to the value of £250.
Out of the preceding statement two questions arise.
1st....Is the verdict of the Jury, finding the right of property in the negro Isham to be in Robert Haiden, and not in Joseph Haiden, conclusive against the plaintiff, so as to bar his action against the defendant?
2d...If the verdict of the Jury be not conclusive, was the gift of the negro by Joseph Haiden, to his son Robert, fraudulent in law, and therefore liable to the plaintiff’s execution?
As to the first, it may be proper to remark, that the office of sheriff has many duties of high responsibility attached to it, in the furtherance of which, error, or a mistake of the law on the part of the sheriff, may involve him in difficulty, and *464 subject him to loss; but in the performance of all official acts the sheriff must act at his peril. Gilbert, in his treatise on Executions, 21, says, “the sheriff is bound at his peril to take only the goods of the defendant; and if he doubt whether the goods shewn him be the defendant’s, he may summon a Jury de bene esse to satisfy himself whether the goods belong to the defendant or not. This will justify him in returning, that the defendant has no goods within his Bailiwick, and mitigate damages in an action of trespass, if the goods seized should not happen to be the defendant’s.
The only effect then, which such an inquisition can have, is to satisfy the sheriff himself on the question of property; to govern his own discretion in the exercise of his office; to excuse him for returning “nulla bona,” and to mitigate the damages in an action of trespass, should the goods taken not belong to the defendant, as supposed by the finding of the Jury; but not to conclude the plaintiff in execution from shewing that the property levied on, did in fact belong to the defendant, in opposition to the verdict of the Jury.
In 6th Term Rep. 88, Roberts v. Thomas, in speaking of a similar case, Lord Kenyon, Ch. J. says, “this is a kind of inquest of office; it is merely to indemnify the sheriff in making his return to the writ ; but it does not bind the right between the litigating parties.”
Had the plaintiff in execution been present when the Jury were impannelled, to try the question of property, if he had been afforded an opportunity of disproving the claim set up to the negro, by Robert Haiden, and if he had been fully heard on that occasion, and the Jury had, after hearing both sides, found a verdict in favor of Robert, then there would be more plausibility in the position that the finding of the Jury should be conclusive between the plaintiff and the sheriff—but it would be in violation of the first principles of law and rational justice, to conclude the plaintiff on a question where *465 he was neither heard, nor had any opportunity of being heard, as the case states that he had no notice of the inquisition; and that it was entirely ex parte.
But admitting that the plaintiff had been duly notified of, and present at the taking of the inquisition, still it is not conclusive as to him—the right decision of most questions of property, depends on the interpetration of the rules of law applicable to each particular case; which questions can be properly tried only before Courts of Justice of competent skill to expound and enforce the rules of law. The inquisition held by Jury, affords an opportunity for the application of the rules of evidence and of law pertinent to the case—and the party aggrieved by their decision, having no right to appeal from it, would be without remedy, if such decision should be conclusive. Such an inquisition can serve only to indemnify the sheriff in making his return, but it does not bind the right of the litigating parties.
The plaintiff having offered the defendant sufficient indemnity for selling the negro, and he having refused to accept it, and to sell under the execution, leaves him entirely without excuse. On the first point, therefore, the Court is of opinion that the finding of the jury is not conclusive in favor of the defendant in this action, and that the plaintiff was not bound by it from shewing that the property of the negro was in Joseph Haiden.
As to the second question, the Court is of opinion, that the gift of the negro in question by Joseph Haiden to his son Robert, was fraudulent in law, and void against the rights of the plaintiff, and liable to his demand. The grounds on which this point is decided are fully explained in the case of Sherman v. Russell, decided at this term; and a repetition of them here is deemed unnecessary.
Judgment for the plaintiff.